UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cr-60105-BLOOM/Valle

UNITED STATES OF AMERICA,

v.

BRANDON PHILIP FORBES,

Defendant.
_____/

**OMNIBUS ORDER ON MOTIONS *IN LIMINE***

**THIS CAUSE** is before the Court upon Defendant Brandon Philip Forbes' Motion *in Limine*, ECF No. [25] ("Defendant's Motion") and the United States of America's Motion *in Limine*, ECF No. [29] ("Government's Motion"). Both Motions have been briefed[1] and are ripe for the Court's consideration. The Court reviewed the Motions, the supporting and opposing submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Defendant's Motion is granted in part and denied in part and the Government's Motion is granted.

**I.  BACKGROUND**

On May 26, 2023, Defendant Brandon Philip Forbes was charged by Indictment with two Counts of Dealing in Counterfeit Obligations or Securities in violation of 18 U.S.C. § 473. ECF No. [13].

According to the Criminal Complaint, ECF No. [1], in "October of 2022," Homeland Security Investigations received a tip from the Royal Bahamas Police Force that an individual

---

[1] The Government filed a Response in Opposition to Defendant's Motion *in Limine* ("Government's Response"). ECF No. [28]. On September 7, 2023, the Court ordered Defendant to file his response, if any, to the Government's Motion *in Limine* by September 11, 2023. *See* ECF No. [45]. Defendant failed to respond.

known as "Jam Rock" was counterfeiting U.S. currency in South Florida and sending it to the Bahamas. *Id.* ¶ 3. This individual was subsequently identified as Defendant, at which point Homeland Security Investigations and the United States Secret Service commenced a joint investigation. *Id.*

The investigators utilized a confidential informant ("CI") and undercover agent ("UC") to purchase counterfeit U.S. currency from Defendant. *Id.* ¶¶ 4, 8. The CI and UC both purchased counterfeit U.S. currency from Defendant and received communications from Defendant indicating that Defendant produced the counterfeit currency.[2] *Id.* ¶¶ 5, 7-8. Defendant was subsequently arrested on May 15, 2023. Defendant's trial is scheduled for October 10, 2023. Defendant seeks to exclude the Government from introducing evidence of Defendant's alleged possession of counterfeit identification, the presence of any counterfeiting materials, and any prior convictions. The Government seeks to preclude the Defendant from mentioning that he was entrapped.

## II.     LEGAL STANDARD

"In fairness to the parties and their ability to put on their case, a court should exclude evidence *in limine* only when it is clearly inadmissible on all potential grounds." *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010). "The movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground." *Id.* "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *In re Seroquel Prods. Liab. Litig.*, Nos. 06-MD-1769, 07-CV-15733, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4,

---

[2] The Criminal Complaint alleges that the CI purchased counterfeit U.S. currency from Defendant on December 22, 2022. Criminal Complaint ¶¶ 4-5. The UC allegedly purchased counterfeit currency from Defendant on March 10, 2023, after being introduced to Defendant by the CI. *Id.* ¶¶ 8-9.

2009). Likewise, "[i]n light of the preliminary or preemptive nature of motions in limine, 'any party may seek reconsideration at trial in light of the evidence actually presented and shall make contemporaneous objections when evidence is elicited.'" *Holder v. Anderson*, No. 16-CV-1307, 2018 WL 4956757, at *1 (M.D. Fla. May 30, 2018) (quoting *Miller ex rel. Miller v. Ford Motor Co.*, No. 01-CV-545, 2004 WL 4054843, at *1 (M.D. Fla. July 22, 2004)); *In re Seroquel Prod. Liab. Litig.*, 2009 WL 260989, at *1 ("The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion *in limine*." (citing *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989))).

Evidence is admissible if relevant, and evidence is relevant if it has any tendency to prove or disprove a fact of consequence. Fed. R. Evid. 401, 402; Advisory Comm. Notes, Fed. R. Evid. 401 ("The standard of probability under the rule is 'more probable than it would be without the evidence.'"); *United States v. Patrick*, 513 F. App'x 882, 886 (11th Cir. 2013). A district court may exclude relevant evidence under Rule 403 if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Rule 403 is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *Patrick*, 513 F. App'x at 886 (citing *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011)); *United States v. Alfaro-Moncada*, 607 F.3d 720, 734 (11th Cir. 2010). Rule 403's "major function . . . is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Grant*, 256 F.3d 1146, 1155 (11th Cir. 2001).

### III. DISCUSSION

#### A. Defendant's Motion *in Limine*

Defendant seeks to preclude the Government from introducing (1) evidence of uncharged criminal conduct, including Defendant's alleged possession of counterfeit identification and the presence of any counterfeiting materials; and 2) evidence of prior convictions. The Government responds that it should be permitted to introduce evidence of uncharged criminal conduct materials because it is inextricably linked to the charged crime and relevant to establishing the method of the crime. Regarding the prior convictions, the Government agrees not to introduce Defendant's prior convictions in its case-in-chief.

##### i. Uncharged Criminal Conduct

Evidence of criminal activity other than the charged offense is generally considered inadmissible extrinsic act evidence under Rule 404(b). *See* Fed. R. Evid. 404(b). "[E]vidence of criminal activity other than the charged offense is not extrinsic act evidence under Fed. R. Evid. 404(b)" however, "if it arose out of the same transaction or series of transactions as the charged offense, was inextricably intertwined with the evidence of the charged offense, or was necessary to complete the story of the charged offense." *United States v. Collins*, 779 F.2d 1520, 1532 (11th Cir. 1986) (citing *United States v. Weeks*, 716 F.2d 830 (11th Cir. 1983)); *see also U.S. v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985) ("Evidence of an uncharged offense arising from the same series of transactions as that charged is not an extrinsic offense within Rule 404(b).") (citations omitted). Courts need not "engage in a 404(b) analysis under these circumstances." *Williford*, 764 F.2d at 1499.

Defendant argues that two categories of evidence should be excluded as uncharged criminal conduct: 1) counterfeit identification allegedly possessed by Defendant, and 2)

4

counterfeiting materials discovered at the Rio Motel.[3] Defendant's Motion *in Limine* at 1. Defendant contends that this evidence is not inextricably linked to his charged conduct, namely, Defendant's alleged sale of counterfeit U.S. currency. Alternatively, Defendant argues that the evidence's probative value is substantially outweighed by the danger of unfair prejudice and accordingly must be excluded under Rule 403. *See* Fed. R. Evid. 403. The Government responds by arguing that the counterfeiting materials are admissible because they are inextricably linked to the charged conduct and explain "exactly the process of how the defendant obtained the counterfeit he was selling to the undercover agent." Government's Response at 6. The Government also argues that both counterfeit driver's licenses—a counterfeit Bahamian driver's license and a counterfeit Florida driver's license—should also be admitted in order to connect Defendant to the source of the counterfeit bank notes. *Id.* at 7.

The Court finds that conducting a Rule 404(b) analysis is unnecessary because the evidence in question is inextricably intertwined with the charged offense. The Government has demonstrated that evidence of the counterfeit identification and materials arise "from the same series of transactions as that charged," and that this evidence "forms an integral and natural part of an account of the crime …." *Williford*, 764 F.2d at 1499 (internal citations omitted). The Government explains that it intends to introduce the counterfeit Bahamian driver's license "to show the defendant's direct connection with the Bahamas, where the counterfeit money was first discovered." The Government similarly plans to introduce the counterfeit Florida driver's license is "to demonstrate that [Defendants'] identity documents" were found at the Rio Motel.[4] Those

---

[3] Defendant refers to evidence of counterfeit materials discovered at "11184 Royal Palm Blvd., Coral Springs, FL," but as the Government notes in its Response, this evidence was recovered from the Rio Motel located at 1824 Washington Street, Hollywood, Florida 33020.
[4] The Government explains that because the unit where Defendant's alleged counterfeit materials were found was rented in someone else's name, Defendant may argue that these materials are not his. Government's Response at 7.

items of evidence are inextricably intertwined with the charged conduct. The Government will likely be unable to "complete the story of the charged offense" without explaining how Defendant produced the allegedly counterfeit bank notes, how the Government traced the allegedly counterfeit bank notes discovered in the Bahamas to Defendant, and whether the allegedly counterfeit materials found at the Rio Motel are Defendant's personal property. *United States v. Collins*, 779 F.2d at 1532. The evidence at issue will likely prove instrumental in answering those critical questions. The Court accordingly determines that none of the evidence is extrinsic evidence under Rule 404(b).

The Court next considers whether the evidence is relevant under Rule 402. If the evidence is relevant, the Court must conduct a Rule 403 analysis to determine whether the probative value of this evidence is substantially outweighed by the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The Court finds that the evidence in question is relevant under Rule 402. As discussed above, evidence of counterfeiting materials is relevant to whether Defendant manufactured counterfeit bank notes, while the counterfeit identification is relevant to whether the allegedly counterfeit bank notes and counterfeiting materials may properly be attributed to Defendant. That evidence clearly indicates a tendency to prove or disprove a fact of consequence.

The probative value of this evidence also outweighs the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Government articulates relevant reasons for admitting the challenged evidence beyond merely attempting to illustrate the bad character of Defendant. While evidence of Defendant possessing counterfeit identification and counterfeiting materials carries

some risk of unfair prejudice, this risk does not substantially outweigh the probative value of the evidence. As noted, the evidence in question speaks to core issues in this case, such as whether Defendant had the means to counterfeit bank notes, whether the materials used to do so may be linked to Defendant, and whether the counterfeit bank notes are Defendant's personal property. Defendant's request to exclude evidence of counterfeit identification and counterfeit materials is accordingly denied.

### ii. Prior convictions

Defendant also seeks to preclude the Government from introducing evidence of prior convictions. *See* Defendant's Motion *in Limine* at 2. The Government does not object to excluding prior convictions in its response. *See generally* Government's Response. Defendant concedes that evidence concerning "prior convictions might be relevant to impeach his credibility" should Defendant testify in his own defense under Federal Rule of Evidence 609. Defendant's Motion *in Limine* at 2. Defendant argues that evidence of any prior convictions is otherwise irrelevant and should "be excluded from the prosecution's case-in-chief." *Id*.

The Court determines that evidence of Defendant's prior convictions should be excluded from the prosecution's case-in-chief. The Government has not indicated an intent to admit Defendant's prior convictions, nor has it articulated a relevant purpose for admitting such evidence. The Court agrees with Defendant that under these circumstances, the Government should be excluded from introducing evidence of prior convictions in its case-in-chief. Accordingly, the Government may introduce evidence of Defendant's prior convictions only if Defendant elects to testify in his own defense. Defendant's Motion *in Limine* is therefore granted in part.

### B. Government's Motion *in Limine*

The Government seeks to preclude Defendant from arguing that he was entrapped by the government in his opening statement, during trial, and to the jury during closing. *See generally* Government's Motion *in Limine*. On September 7, 2023, the Court ordered Defendant to respond to the Governments' Motion *in Limine* by September 11, 2023. ECF No. [45]. Defendant failed to do so. The Court will accordingly consider the merits of the Government's Motion *in Limine* without the benefit of a response from Defendant.

"A valid entrapment defense requires two elements: (1) government inducement of the crime, and (2) defendant's lack of predisposition to commit the crime prior to the inducement." *United States v. Francis*, 131 F.3d 1452, 1455-56 (11th Cir. 1997). "The defendant bears an initial burden of production to show government inducement." United States v. Brown, 43 F.3d 618, 623 (11th Cir. 1995). Government inducement "requires an element of persuasion or mild coercion," that is, "something like excessive pressure or manipulation of a non-criminal motive." *Id.* Defendant can meet this burden by "demonstrating that he had not favorably received the government plan, and [by showing] that the government had had to 'push' it on him …." *United States v. Andrews*, 765 F.2d 1491, 1499 (11th Cir. 1985) (citing *United States v. Hammond*, 598 F.2d 1008 (5th Cir. 1979)).

The Government argues that there is no evidence demonstrating that the government placed pressure on Defendant to commit any crime, nor is there evidence indicating that Defendant was reluctant to sell counterfeit U.S. currency in violation of 18 U.S.C. § 473. The Government accordingly argues that Defendant should be excluded from receiving a jury instruction on entrapment because Defendant cannot establish the first element of an entrapment defense. *See*

Government's Motion *in Limine* at 2, 4. The Government also maintains that Defendant should be excluded from mentioning entrapment in his opening statement for the same reasons. *Id.*

The Government is correct that Defendant is not entitled to a jury instruction on entrapment if Defendant fails to meet his evidentiary burden to show that the government induced him to commit the alleged crime. *See, e.g.*, *United States v. Fernandez*, 837 F.2d 1031, 1035 (11th Cir. 1988) ("A defendant is entitled to have the court instruct the jury on his defense theory only if that theory has an evidentiary foundation and the requested instruction presents a cognizable legal defense."). The Government argues that there is no evidentiary foundation for an entrapment jury instruction because no evidence indicates that the Government induced Defendant to sell counterfeit U.S. currency. Government's Motion *in Limine* ¶¶ 2-3. The Government accordingly argues that Defendant should be excluded from receiving an entrapment jury instruction—and from mentioning entrapment in his opening statement—unless Defendant informs the Court what evidence he plans to provide in support and "how he intends to prove it." *Id.* at 4. The Government contends that this is necessary to avoid letting the "entrapment cat out of the bag" in the absence of evidence to support it. *Id.* Defendant failed to respond.

The Court finds that Defendant has failed to point to any evidence supporting an entrapment defense. Absent a response from Defendant, the Court is unable to determine what, if any, evidence Defendant plans to provide in support of an entrapment defense, or whether Defendant plans to raise entrapment as a defense at all. Defendant is precluded from raising entrapment in his opening statement to avoid confusing the jury on a defense that may lack evidentiary support. If Defendant provides evidence that supports a cognizable entrapment defense, however, the Court shall permit Defendant to discuss entrapment during his case-in-chief and during closing arguments. Defendant will then be entitled to a jury instruction on entrapment,

but as discussed, this instruction is improper if Defendant fails to meet his evidentiary burden. The Government's Motion *in Limine* is accordingly granted.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion *in Limine*, **ECF No. [25]**, is **GRANTED IN PART AND DENIED IN PART**;

2. The Government's Motion *in Limine*, **ECF No. [29]**, is **GRANTED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on September 27, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record